IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WILDER CHIROPRACTIC, INC., individually and as the representative of a class of similarly situated persons,<br><br>      Plaintiff,<br><br>  v.<br><br>PIZZA HUT OF SOUTHERN WISCONSIN, INC.,<br><br>      Defendant. | No. 10-CV-229-SLC |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS**

  Plaintiff, Wilder Chiropractic, Inc. ("Wilder"), on behalf of itself and a class of similarly-situated persons (identified herein as the "Settlement Class"), pursuant to Fed. R. Civ. P. 23(e), respectfully requests that this Court enter an order (1) preliminarily approving the parties' proposed class action Settlement Agreement (the "Agreement") attached hereto as <u>Exhibit A</u>, (2) approving the form of Class Notice attached as Exhibit 2 to the Agreement and approving its dissemination to the Settlement Class by facsimile, and (3) setting dates for opt-outs, objections, and a fairness hearing. A proposed Order is attached as Exhibit 1 to the Agreement and is attached hereto as <u>Exhibit B</u>.

**I. Background and summary of settlement.**

  1. Wilder's Complaint alleges that defendant, Pizza Hut of Southern Wisconsin, Inc. ("Pizza Hut"), faxed an unsolicited advertisement to Wilder and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the

"TCPA"). The action seeks statutory damages.

2.      Through a series of conversations, Wilder and Pizza Hut, have agreed to settle this matter as a class action as set forth in the Agreement. Each member of the Settlement Class who submits a timely and valid claim form (attached as Exhibit 2 to the Agreement) will be mailed a check for $332.11 for each of Pizza Hut's advertisements sent to them, as determined by Plaintiff's expert.

3.      Wilder and Pizza Hut reached the agreement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, the likelihood of protracted litigation, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, Wilder and Pizza Hut agreed to and executed the Agreement.

4.      Through discovery and expert computer analysis, Wilder determined that Pizza Hut's form advertisement was successfully a total of 2,592 times to a total of 1,384 different telephone fax numbers. Pizza Hut has denied liability based on a variety of legal and factual arguments. Without waiving any of its defenses or arguments, Pizza Hut has agreed to settle on the terms in the Agreement.

5.      The key terms of the Agreement are as follows:

(a)     <u>Certification of the Settlement Class</u>. The parties have agreed to a Fed. R. Civ. P. 23(b)(3) settlement class defined as follows: "All persons who were successfully sent one or more faxes in March 2006 advertising 'Spring into Savings' with 'Limited Time Offers' at the Pizza Hut at 811 S. Gammon

Rd., Madison, WI."

  (b) <u>Class counsel and class representative plaintiff</u>. The parties have agreed that Wilder will be the "Class Representative" and that Wilder's attorneys will be "Class Counsel."

  (c) <u>Monetary Relief to the Members of the Settlement Class</u>. Pizza Hut has agreed to create a settlement fund of $1,296,000.00 (the "Settlement Fund"), which is available to pay Class Counsel's fees and expenses, an incentive award to the Class Representative, and the claims submitted by members of the Settlement Class. Each class member who submits a timely and valid claim form will receive a check in the amount of $332.11 from the Settlement Fund. Any money left in the Settlement Fund after payments for approved claims of class members, to the Class Representative, and to Class Counsel shall revert to Pizza Hut.

  (d) <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile. If any faxes are unsuccessful, Plaintiff's counsel will cause the Notice and Claim Form to be mailed, via U.S. Mail to those particular class members whose fax notice failed. The notice includes instructions about opting out, objecting, or submitting a claim form by fax or mail to Class Counsel (who are acting as the claims administrator to reduce administrative expenses).

  (e) <u>Claims</u>. Class members must submit a claim form to receive a share of the Settlement Fund. The claim form (attached as Exhibit 2 to the

Agreement) merely requires that a class member demonstrate her membership in the class by verifying that the fax number in question was her fax number in March 2006.

  (f) <u>Settlement Class Opt-Out Rights</u>. Any class member may seek to be excluded from the Agreement and from the settlement by opting out of the Settlement Class within the time period set by the Court. The parties suggest a thirty (30) day period for opt outs or objections. Any member who opts out of the Class shall not be bound by any of the Court's orders or the terms of the Agreement and shall not be entitled to any of the benefits set forth in the Agreement.

  (g) <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Pizza Hut and the other released parties.

  (h) <u>Incentive Award and Attorney's Fees and Costs</u>. At the final approval hearing, after the Class is notified about them, Class Counsel will apply to the Court to approve an award of $7,500 from the Settlement Fund to Wilder for serving as the class representative. Class Counsel will apply to the Court to approve an award of attorney's fees equal to one-third of the Settlement Fund, plus reasonable out-of-pocket expenses. Pizza Hut has agreed to pay these amounts and will not object to these requests.

II.    **The Court should grant preliminary approval to the settlement.**

    A.    **The proposed settlement is within the range of possible approval**

    6.    A district court's review of a proposed Class Action Settlement is typically a two-step process. *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F. 2d 305,314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F. 3d 873 (7th Cir. 1998). The first step is to hold a preliminary fairness hearing prior to notifying the class members about the proposed settlement. *Id.* The purpose of that preliminary hearing is to determine whether the proposed settlement is "within range of possible approval." *In re General Motors Corporation Engine Interchange Litigation*, 594 F. 2d 1006, 1124 (7th Cir. 1979). *See also Carnegie v. Household International, Inc.* 371 F. Supp. 954, 955 (N.D. Ill. 2005) (hearing is to "determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing").

    B.    **Standard for judicial evaluation and approval.**

    7.    A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.2d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F. 3d 978, 986 (7th Cir. 2002). It is well-established that the public interest is served by settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). If the Court finds that the settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to notify the

5

class members about the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

### C. Factors considered in determining whether a settlement is fair, reasonable, and adequate.

8. The factors considered are: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F. 3d 1191, 1198-1199 (7th Cir. 1996).

9. In this case, these factors show that the proposed settlement is within the range of possible approval. Therefore, the Court should permit the parties to notify the Settlement Class and the Court should schedule a fairness hearing to determine whether to finally approve the settlement.

10. The Agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case.

11. Pizza Hut has created a settlement fund of $1,296,000. Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will receive a check in the amount of $332.11 for each of the faxes at issue successfully sent to them. Additionally, Pizza Hut has agreed not to send any future fax advertisement in violation of the TCPA, and agreed to the entry of an

injunction prohibiting future violations of that statute. (Exhibit 3 to the Agreement at ¶16.). This settlement represents approximately 100% of the amount in controversy and it is an excellent outcome and result for the Class.

12. Class action litigation, especially cases involving numerous or complex issues, is time consuming in terms of both pretrial and trial work. Because of the significant costs that class actions can involve for both parties, courts consider the savings that would result from settlement of the case. *Isby*, 75 F. 3d at 1198-99 (holding that settlement was outcome "comparable if not far superior," to that which the plaintiffs might achieve at trial because continuous litigation would require "resolution of many difficult and complex issues, and would entail considerable additional expense"), *quoting Tafia v. Bayh*, 746 F. Supp. 723, 727 (N.D. Ind. 1994).

13. There are risks attendant to further litigation in this matter, and substantial delay and expense. The decision to settle is reasonable in light of the risks of continued litigation. Here, the parties would have completed briefing on class certification, probably would have briefed summary judgment, possibly would have had a trial, and then appeals probably would have followed. Settlement avoids all of that time, expense, and uncertainty.

14. Pizza Hut has denied liability and has agreed to settle only to avoid the distraction and expense of defending protracted litigation and exposure to higher liability. The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500 in damages for each junk fax, or (iii) obtain an injunction plus damages. If a court

7

finds that the sender willfully or knowingly violated the TCPA, the court may increase the award up to three times the amount of damages. Here, each class member who does not opt-out of this proposed settlement and who submits a timely and valid claim form will receive a cash payment, in the amount of $332.11 for each fax Defendant successfully sent them. Including fees and expenses, the Settlement is equal to $500 per advertising fax at issue.

15. Wilder's attorneys believe this settlement is fair, reasonable, and adequate. Wilder's attorneys have litigated TCPA class actions since 2003. They have been appointed class counsel in dozens of such cases. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012) (7th Cir. Jun 13, 2008); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.), *app. denied* (September 9, 2009); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.); *G.M. Sign, Inc. v. Group C Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.).

16. Further, Wilder's counsel have negotiated numerous class-wide settlements in TCPA cases, too.

17. Based upon the foregoing, and the judgment of experienced class counsel, Wilder requests that the Court preliminarily approve the settlement.

### III. At final approval, Class Counsel will ask the Court to approve Pizza Hut's agreement to pay Class Counsel's fees and expenses, and an incentive award to Wilder, pursuant to the Agreement.

18. At final approval, Class Counsel will request that the Court approve Pizza Hut's payment to Wilder in the amount of $7,500 from the Settlement Fund for serving as the class representative.

19. Incentive fees are appropriate to reward class representatives who have pursued claims on behalf of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

20. Wilder was the catalyst of this case. After receiving what it contended were unsolicited advertising faxes from Pizza Hut, Wilder filed and pursued this action. Wilder's efforts benefited the class members. Class Counsel will request that the Court award Wilder an incentive payment of $7,500 for its efforts on behalf of the class. In the Northern District of Illinois, Judge Darrah and Judge Kendall have approved awards of $9,500 to class representatives in similar TCPA class action settlements. *See CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146).

21. Additionally, at final approval Class Counsel will request that the Court approve Pizza Hut's agreement to pay Class Counsel attorneys fees equal to

one-third of the Settlement Fund plus their reasonable out-of-pocket expenses. These amounts are within the approved range in class actions. *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees).

22. It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of $20 million), *citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

23. The Seventh Circuit "has held in a number of cases that when common funds are involved, the district court determines a reasonable fee to be paid out of the common fund, and in doing so, considers the value the marketplace would have assigned to the case at the outset." *Goodell v. Charter Communications, LLC*, No. 08-cv-512-bbc, 2010 WL 3259349 at *1 (W.D. WI. Aug. 17, 2010) (Crabb, J.) (discussing cases). *See Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light

of the risk of nonpayment and the normal rate of compensation in the market at the time.'"), *citing In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir.2001); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class).

  24. Here, Class Counsel's request for one-third of the settlement fund is within the accepted market rate for TCPA cases. *E.g., Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Doc. 33) (fees equal to one-third of the settlement fund); *CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2) (f fees equal to one-third of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (fees equal to one-third of the settlement fund); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (fees and expenses equal to thirty-three percent of the settlement fund); *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill.) (Reagan, J.) (Doc. 67 in that case) (approving Class Counsel's request for fees of one-third of total settlement amount); *CE Design, Ltd. v. Cy's Crabhouse,* 07 C 5456 (N.D. Ill.) (Kennelly, J.) (N.D. Ill. Sept. 22, 2010) (Doc. 373 in that case) (preliminarily approving Class Counsel's request for fees of one-third of total settlement amount).

  25. Class Counsel undertook this case on a contingency basis and achieved an excellent result in a fair and efficient manner. Class Counsel resolved this case

11

through unique capabilities from their years of experience in these types of cases. As indicated above, Class Counsel have been litigating TCPA class actions and insurance coverage actions about TCPA claims since 2003, and have litigated class actions for many more years.

26. The purpose of a class action lawsuit is to provide a benefit to Class members, not to litigate for the sake of litigating. Class Counsel delivered significant benefits to the Class. Class Counsel faced a significant risk of nonpayment, not only for their time but also for their out-of-pocket costs.

27. At final approval, if the Court finds that the settlement is fair, reasonable, and adequate, then the Court should approve the payment of fees to Class Counsel in an amount equal to one-third of the Settlement Fund.

## IV. The Court should approve notice to the Settlement Class.

28. The parties propose to issue notice by facsimile to the Settlement Class. A copy of the proposed notice is attached as Exhibit 2 to the attached Agreement. If any faxes are unsuccessful, Class Counsel will cause the Notice and Claim Form to be mailed by U.S. Mail to those particular class members whose faxes were unsuccessful.

29. Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

30. Rule 23(e)(i)(B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to a reasonable manner of notice; fax to the fax numbers in question. The simple, one-page claim form will be delivered with the notice, so that members of the Class can complete a claim form and return it immediately.

31. The notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The proposed notice satisfies all of these requirements.

32. The notice meets the legal standards for appropriate notice and satisfies Rule 23(e). Therefore, the Court should approve the proposed notice and authorize its dissemination to the Class.

33. If the Court grants preliminary approval, Plaintiff can deliver the class notice within seven days of the Court's order. Claim forms are due within 60 days after the notice is sent. Plaintiff suggests that exclusion requests and objections should be due within the same 60 days. Therefore, Plaintiff proposes that paragraphs 8 (a), (b), and (c) include a date sixty-seven (67) calendar days after the Court enters the Preliminary Approval Order.

## V. The Court should schedule a final fairness hearing.

34. Wilder requests that the Court schedule a final fairness hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment is attached as Exhibit 3 to the Agreement.

35. The final approval order cannot be entered until 90 days after service of the CAFA notice to the U.S. and Wisconsin attorneys general. 28 U.S.C. 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). Plaintiff will serve those notices on Monday, January 31, 2011.

36. Therefore, the final fairness hearing should be set for a date convenient to the Court that falls after May 11, 2011. That date would be inserted at paragraph 8 (d) of the Preliminary Approval Order.

## VI. Conclusion.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as <u>Exhibit B</u> (Exhibit 1 to the Agreement), granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs or objections 67 days after entry of the Preliminary Approval Order, and a final approval hearing on or after May 11, 2011.

Respectfully submitted,

/s Phillip A. Bock
One of Plaintiff's attorneys

Charles H. Barr
CROEN & BARR LLP
250 East Wisconsin Avenue, Suite 1550
Milwaukee, WI 53202
Telephone: 414-226-2080

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
James M. Smith
BOCK & HATCH, LLC.
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500